ARCHER-DANIELS-MIDLAND COMPANY, Respondent, vs. ANTHONY, Appellant.

*May 7—June 3, 1952.*

40

*Wendell McHenry* of Waupaca, for the appellant.
*Edward J. Hart* of Waupaca, for the respondent.

BROWN, J.  It is undisputed that the controversy grew out of negotiations between plaintiff and defendant for plaintiff to finance the feeding and finishing of defendant's turkeys. It is also undisputed that the parties believed they had reached an agreement in oral negotiations between defendant and plaintiff's agent subject to ratification by plaintiff's home office, and that pursuant to what plaintiff supposed was their common understanding and upon defendant's written orders, but before notifying defendant of the ratification, plaintiff made cash disbursements for, and delivered feed to, defendant in a total amount and value of $7,748.32. Plaintiff then wrote defendant a letter confirming the verbal agree-

ment in which it stated the terms as plaintiff understood them and informed defendant of the payments pursuant to defendant's orders. Defendant contends that the letter did not set forth the agreement correctly, particularly because it specified that $2,037.32, which defendant had paid plaintiff for feed before the negotiations took place, was not to be refunded immediately to defendant as part of the financing contract, and would not be so refunded until defendant had moved the turkeys to his own farm.

Though displeased, defendant did not communicate with plaintiff but took steps, as he testified, to protect himself by procuring a chattel mortgage of $8,000 on the turkeys from one Winski who, strange to relate, turns out to be the real owner of the birds and is a man who had previously applied to plaintiff for financing and had been refused. After giving this mortgage to defendant, Winski sold the turkeys at auction, paid defendant $8,000, sent $6,257 to plaintiff and had something left over for himself. The difference between the $7,748.32 which plaintiff had advanced on the strength of its supposed contract with defendant and the $6,257 which it received is $1,491.32, for the recovery of which this action was commenced.

While defendant's answer set forth a completely different version of the attendant facts as well as of the contract orally agreed upon, the issue upon the trial was whether plaintiff's letter of confirmation was a correct statement of the agreement. Defendant's contention that there was a variance in that it deferred reimbursement of $2,037.32 until after the turkeys were moved from the Winski farm to defendant's farm and that such payment was not to be within five days of May 2d was expressly answered by the jury.

"Question 1. On or about May 2, 1950, did the plaintiff and the defendant enter into an agreement whereby the plaintiff agreed to finance and furnish to the defendant certain turkey feed to feed and finish the turkeys that were at the

time on the Winski farm, and to finance certain indebtedness of the defendant or one Winski, or either or both?

"Answer: Yes (12).

"Question 2. If you answer question 1 'Yes,' then answer question 2. If you answer question 1 'No,' then do not answer question 2. Did the agreement between the parties contain a provision that the defendant was to move the turkeys from the Winski farm to the defendant's farm?

"Answer: Yes (12).

"Question 3. If you answer question 1 'Yes,' then answer question 3. If you answer question 1 'No,' then do not answer question 3. Did the agreement between the parties contain a provision that the sum of $2,037.32 should not be advanced to the defendant until the turkeys had been moved from the Winski farm to the defendant's farm?

"Answer: Yes (12).

"Question 4. If you answer question 1 'Yes,' then answer question 4. If you answer question 1 'No,' then do not answer question 4. Did the agreement between the parties require the plaintiff to advance the sum of $2,037.32 to the defendant upon the acceptance of the agreement by the Minneapolis office of the plaintiff and within a week from May 2, 1950?

"Answer: No (12)."

This was supplemented by the court's findings of fact stating the plaintiff's receipts and disbursements, on which there is no dispute, and determining that defendant is indebted to plaintiff for the difference with interest.

From a study of the record we believe that the verdict presented the issue of fact and the evidence warranted the jury's answers.

Defendant also questions the court's charge to the jury concerning the necessity of a meeting of the minds of the contracting parties. The court instructed that there must be such a meeting and charged further that defendant's failure to reply or object to plaintiff's letter of confirmation was not necessarily an approval or acceptance of its statements. The

defendant did not request any instructions or questions to be included in the special verdict.

We conclude that the answers of the jury dispose of the issues of fact and we find no error in the instructions. The judgment should be affirmed.

*By the Court.*—Judgment affirmed.